On March 28, 1997, Donnie Burson was involuntarily admitted to the University of Alabama at Birmingham Psychiatric Center (the "hospital"). His caseworker called on law enforcement officers to escort him into the hospital building because he was becoming violent. Officer Jan McDuff was one of the officers who responded. When Officer McDuff arrived at the scene in front of the hospital building, another officer, Officer Kenny Woods, was present. As Officer McDuff approached, Burson, who was extremely agitated and who had been shouting obscenities at Officer Woods, lunged toward Officer McDuff, expressing an intention to fight before being taken "upstairs." Officer Woods and another male officer restrained Burson, cuffing him, and the three officers took him inside. According to Officer McDuff, Burson fought the entire way, kicking and cursing. After delivering Burson to the hospital for admission, Officer McDuff filled out an involuntary commitment petition.
On April 2, 1997, the probate judge, after reviewing the petition for involuntary commitment, set a probable cause hearing for April 8, 1997. After the probable cause hearing, the probate judge committed Burson; he appeals. We reverse and remand.
To involuntarily commit a person to inpatient treatment, a probate court must find, "based upon clear and convincing evidence that (i)[he] is mentally ill; (ii) as a result of the mental illness [he] poses a real and present threat of substantial harm to self and/or others; (iii)[he] will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iv)[he] is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable." Ala. Code 1975, § 22-52-10.4(a).
Burson makes three arguments on appeal. He first argues that the probate court erred by committing him without any evidence of an overt act. He next argues that the probate court erred in finding that the state had put forth clear and convincing proof of "a real and present threat of substantial harm to self and/or others." His final argument is that he was denied due process because no petition was filed before his confinement and because the probable cause hearing was not held promptly. Because we find Burson's final argument to be dispositive, we do not address his other arguments. *Page 261 
Under our commitment statute, the process of involuntary commitment begins when an interested party files a petition with the probate court. Ala. Code 1975, § 22-52-1.2. The probate judge must review the petition and examine the petitioner under oath to determine whether the petition has merit. Ala. Code 1975, § 22-52-2. If the petition is found to have merit, the probate judge, among other things, sends notice of the petition to the person sought to be committed. Ala. Code 1975, § 22-52-3. If the petition seeks limitations on the person's liberty before a full hearing, the judge must have the person brought before him for an interview to determine whether immediate detention is warranted. Ala. Code 1975, § 22-52-7. If the judge decides that the person should be detained in a psychiatric facility before the final hearing, the judge is required by law to have a probable cause hearing within seven days of the date of detention. Ala. Code 1975, § 22-52-8.
The state argues that Burson could be committed without a prior petition, pursuant to Act No. 353, 1975 Ala. Acts p. 891 (effective September 16, 1975) ("Act 353" or "the Act"). The state also argues that, because the probate judge did not "approve" the petition until April 2, 1997, and because he held the hearing on April 8, within seven days of April 2, the probate court complied with the requirements of § 22-52-8. Although we agree that Act 353 did authorize the commitment of Burson without a prior petition, we cannot agree with the state's contention that the requirements of both the Act and the statute were met.
Act 353 provides a procedure by which a law enforcement officer can have an individual placed in psychiatric care prior to the filing of a petition for involuntary commitment. It applies to counties with populations of 600,000 or more. The Act requires that a law enforcement officer have reasonable cause for believing that a person is mentally ill. Act 353, § 4. If an officer has such a belief, he or she is authorized to take the person alleged to be mentally ill into custody and deliver that person to a mental health care facility. Id. The staff of the mental health care facility must immediately perform an initial examination to determine whether the person should be admitted for observation and attention. Id. If the staff finds that the person is in need of psychiatric care, the person is admitted to the facility. Id.
When a person is admitted to the facility pursuant to the Act, the director of the facility must notify the probate judge of the admission no later than the next business day.Id. The probate judge must then hold a probable cause hearing to determine whether confinement at the facility is necessary.Id. However, "[i]n no event may detention in the absence of aprobable cause hearing exceed seven (7) days from the date ofthe initial detention" Id. (emphasis added).
The state's argument is based on the assumption that the filing of the petition by Officer McDuff removed Burson from the remaining provisions of Act 353, so that the probate court had only to comply with the commitment statute as the commitment procedure progressed. We disagree. The filing of the petition by Officer McDuff does not change the date that Burson was originally detained in the hospital against his will.
If we approved the method the state uses to calculate the time allowed for the probable cause hearing, which under both the Act and the statute is to be within seven days of the original confinement, then we would be approving Burson's detention for a period that exceeds seven days. Such a decision would deny due process and would violate the letter and the spirit of both Act 353 and the commitment statute. The state cannot have it both ways. If it wishes to make use of Act 353, it must comply with all provisions of the Act. Therefore, we reverse the involuntary commitment order and remand this cause.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES, MONROE, and THOMPSON, JJ., concur. *Page 262